PEOPLE v PULLINS

Docket No. 80721. Submitted June 19, 1985, at Lansing.—Decided
    September 3, 1985.
    Virgil A. Pullins, Jr., was convicted of first-degree criminal sexual
    assault, Oakland Circuit Court, Robért C. Anderson, J. Defen-
    dant appealed, raising several issues. *Held:*
        1. The defense was alibi. The only alibi witness who was not
    a relative of defendant was not available to testify on the day
    of trial but could testify the following day. The trial court erred
    in refusing defendant's request for a continuance. The interest
    of the state in complete discovery and a fair trial for the
    defendant outweighs the minor negative effect such a delay
    would have had on the trial process here.
        2. The trial court erred in allowing the preliminary examina-
    tion testimony of the physician who examined the complainant
    to be read into the record. The physician was available the day
    after the court ruled on admitting the preliminary examination
    testimony. Thus, the physician was not unavailable under the
    Rules of Evidence and the court erred in admitting the testi-
    mony.
        3. The trial court erred in admitting evidence that the
    complainant suffered from rape trauma syndrome for the pur-
    pose of proving that a sexual assault occurred.
    *Reversed and remanded with instructions.*

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur 2d, Continuance §§ 27 *et seq.*
    See the annotations in the ALR3d/4th Quick Index under topic
        Continuance and Adjournment.
[2] Am Jur 2d, Criminal Law §§ 717-719, *953-955.*
    See the annotations in the ALR3d/4th Quick Index under topic
        Writ and Process.
[3] Am Jur 2d, Evidence §§ 708 *et seq.*
    See the annotations in the ALR3d/4th Quick Index under topic Res
        Gestae.
[4] Am Jur 2d, Criminal Law §§ 411 *et seq.*
    See the annotations in the ALR3d/4th Quick Index under topic
        Preliminary or Pretrial Matters.
[5] Am Jur 2d, Rape §§ 55 *et seq.*
    See the annotations in the ALR3d/4th Quick Index under topic
        Rape.

1. CRIMINAL LAW — CONTINUANCES — TRIAL.

   The grant or denial of a request for a continuance at trial is within the discretion of the court.

2. CRIMINAL LAW — CONSTITUTIONAL LAW — COMPULSORY PROCESS.

   A criminal defendant has a constitutional right to compulsory process to obtain witnesses in his favor (US Const, Am VI; Const 1963, art 1, § 20).

3. RAPE — WITNESSES — RES GESTAE WITNESSES — EXAMINING PHYSICIAN.

   The examining physician of a complainant in a sexual misconduct prosecution is a res gestae witness.

4. WITNESSES — CRIMINAL LAW — PRELIMINARY EXAMINATION TESTIMONY — APPEAL. ·

   Testimony of a witness taken at a preliminary hearing may be used by a prosecutor where the witness cannot, for any reason, be produced at trial; however, the absence of a witness from trial is not excused where that absence results from the prosecution's lack of good faith efforts or failure to exercise due diligence in attempting to secure the witness's presence; whether or not a prosecutor has exercised due diligence is within the discretion of the trial court and his determination will not be overturned on appeal unless a clear abuse of discretion is shown (MCL 768.26; MSA 28.1049).

5. RAPE — EVIDENCE — RAPE TRAUMA SYNDROME.

   Evidence that the complainant suffers from rape trauma syndrome is not admissible to prove that a rape occurred.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Kenneth M. Mogill,* for defendant.

Before: Allen, P.J., and Wahls and J. P. O'Brien,* JJ.

J. P. O'Brien, J. Defendant was convicted by a jury of criminal sexual conduct in the first degree, MCL 750.520b; MSA 28.788(2), and sentenced to a prison term of from 10 to 50 years. He now appeals as of right.

The victim was a six-year-old girl who was cared for at a day care center operated by defendant's mother. Upon arriving home from the day care center on October 24, 1983, at approximately 6:30 p.m., the victim went straight to the kitchen and burst into tears. She was very upset and had blood on her underwear. She told her mother three times that Allen had done it. The victim was taken to the hospital where she was examined by a physician. Based on the examination the physician concluded that there had been vaginal penetration. At trial, the victim stated that she was taking a nap when defendant, who had a big knife, pulled up her dress and pulled down her panties. She stated she screamed when defendant assaulted her but that defendant covered her mouth and threatened to flush her head down the toilet.

The victim's father stated that, since the assault, the victim had been afraid to answer the telephone and had trouble sleeping. A therapist testified that the victim's behavior since the incident was consistent with that of a rape victim.

Defendant denied assaulting the complainant and testified he had been with a friend at the time the assault occurred. This alibi was corroborated by defendant's mother.

Although defendant has raised several allegations of error, we find one dispositive and reverse defendant's conviction and remand for a new trial.

* Recorder's court judge, sitting on the Court of Appeals by assignment.

At trial, defendant twice moved for short continuances so that two witnesses could be present in person to testify. Both times, the trial court refused. We find it did so erroneously.

The trial court erred in refusing to grant a continuance to permit an alibi witness to testify. Defendant denied committing the assault and claimed he was with Billy Potts at the time the assault was alleged to have occurred. Potts was listed on the notice of alibi and had been interviewed by the police. For unspecified reasons, Potts was unavailable to testify on July 31, 1984, but was scheduled to return home that evening and would be available to testify the next day. There is nothing in the record to indicate that defendant was responsible for Potts's absence or that it was a delay tactic. The defendant moved to adjourn so that Potts's testimony could be secured. The trial court refused.

While the matter of a continuance is within the sound discretion of the trial judge. *People v Charles O Williams,* 386 Mich 565, 575; 194 NW2d 337 (1972); *People v Merritt,* 396 Mich 67, 80-81; 238 NW2d 31 (1976), *reh den* 396 Mich 977 (1976), a defendant also has a right to call witnesses in his defense, and a constitutional right to compulsory process to obtain witnesses in his favor. US Const Am VI; Const 1963, art 1, § 20. When the inconvenience of defendant's request (a continuance to the next day) is balanced against defendant's rights (to a fair trial and for compulsory process for witnesses in his favor), we can only conclude that the trial court abused its discretion. Potts would have been the only witness unrelated to defendant to testify for the defense. If Potts's testimony corroborated defendant's story, it may have established a reasonable doubt as to defendant's guilt. The interest of the state in complete

discovery and a fair trial for the defendant out-weighs the minor negative effect such a delay would have had on the trial process here. *People v Merritt, supra.* Potts's testimony was imperative to defendant's defense and could not be considered cumulative. We find defendant was denied his rights to a fair trial and to compulsory process.

We also find error in allowing the preliminary examination testimony of a res gestae witness, the examining physician, to be read into the record when the witness could have, in all likelihood, been present at trial to testify in person. Soon after the victim arrived home she was taken to the hospital where she was examined by Dr. Kalava-dhy Srinivasan. On July 30, 1984, the first day of trial, the prosecutor revealed that Dr. Srinivasan was on vacation and would not return until August 1, 1984. The prosecutor moved to use the physician's preliminary examination testimony at trial in lieu of her actual presence. Defendant objected, arguing that Dr. Srinivasan was a res gestae witness. The next day, the court ruled that the doctor was not a res gestae witness and allowed her previous testimony to be read to the jury. The examining physician of the victim in a prosecution for sexual misconduct is a res gestae witness. *People v Kirtdoll,* 391 Mich 370, 395; 217 NW2d 37 (1974); *People v Hearn,* 100 Mich App 749, 755; 300 NW2d 396 (1980). The court's ruling that Dr. Srinivasan was not a res gestae witness was clearly erroneous.

Testimony taken at a preliminary examination may be used in evidence by the prosecutor when-ever the witness who gave the testimony cannot, for any reason, be produced at trial. MCL 768.26; MSA 28.1049; *People v Starr,* 89 Mich App 342, 345; 280 NW2d 519 (1979). MRE 804(b)(1) states that prior testimony of a witness unavailable for

trial may be read into evidence provided the opposing party had an opportunity and motive to develop the testimony by examining the witness at the prior proceeding. *People v Gross,* 123 Mich App 467, 470; 332 NW2d 576 (1983), *lv den* 417 Mich 1100.36 (1983). However, MCL 768.26; MSA 28.1049 gives way to the defendant's constitutional right of confrontation where the witness's absence from trial stems from the prosecutor's lack of good faith effort or failure to exercise due diligence in attempting to secure the witness's presence. The determination of due diligence is a matter for the trial court and that determination will not be overturned on appeal unless a clear abuse of discretion is shown. *People v Starr, supra.* The trial court found that Dr. Srinivasan was not a res gestae witness and therefore never reached the due-diligence question.

In this case, Dr. Srinivasan was scheduled to return from her vacation the day following the court's ruling permitting her preliminary examination testimony to be used at trial. Thus she was not "unavailable" under MRE 804(a). Defendant's right to confront witnesses against him, particularly res gestae witnesses, should not be cast aside so readily in order to save such a short period of time. We find that the trial court abused its discretion in excusing Dr. Srinivasan's presence and in permitting her preliminary examination testimony to be read to the jury. *People v Starr, supra.*

We will address other issues raised by defendant because they may occur at retrial.

We find admission of the therapist's testimony concerning "rape trauma syndrome" to be erroneous. The therapist, who had been seeing the victim weekly, testified that the victim's symptoms were consistent with those of a person who had been raped. Rape trauma syndrome refers to a constel-

lation of symptoms experienced by the victims of sexual assault. The term "rape trauma syndrome" was coined in 1974 in an article describing the recurring pattern of emotional distress in rape victims. Burgess & Holmstrom, *Rape Trauma Syndrome,* 131 AM J of Psychiatry 981 (1974). See also Comment, *Expert Testimony on Rape Trauma Syndrome: Admissibility and Effective Use in Criminal Rape Prosecution,* 33 Am U L Rev 417 (1984). Michigan adheres to the traditional test governing the admissibility of scientific evidence as originally set forth in *Frye v United States,* 54 US App DC 46, 47; 293 F 1013 (1923):

"[W]hile courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs."

The use of rape trauma syndrome to establish that criminal sexual conduct in fact occurred is an issue of first impression in Michigan, but the issue has been addressed by the highest courts of six other states.

In *State v Marks,* 231 Kan 645; 647 P2d 1292 (1982), the Kansas Supreme Court, applying the *Frye* test, concluded that rape trauma syndrome was generally accepted to be a common reaction to sexual assault and that it is relevant and admissible where the defense is consent. 231 Kan 654. Similar conclusions were reached in *State v Liddell,* 685 P2d 918 (Mont, 1984); *State v Huey,* 145 Ariz 59; 699 P2d 1290 (1985), although neither court applied the *Frye* test in its analysis. In both *Liddell* and *Huey,* evidence that the victim was suffering from rape trauma syndrome was admitted to rebut the defense of consent.

On the other hand, in *People v Bledsoe,* 36 Cal 3d 236; 203 Cal Rptr 450; 681 P2d 291 (1984); *State v Saldana,* 324 NW2d 227 (Minn, 1982), and *State v Taylor,* 663 SW2d 235 (Mo, 1984), the courts, applying the *Frye* test, concluded that rape trauma syndrome was not the type of scientific test that accurately and reliably indicates whether a rape has occurred. These courts held such evidence inadmissible for that purpose. The *Bledsoe* court further stated that rape trauma syndrome was developed by professional rape counselors as a therapeutic tool, to help predict, identify, and treat emotional problems experienced by rape victims. The court concluded:

"Given the history, purpose and nature of the rape trauma syndrome concept, we conclude that expert testimony that a complaining witness suffers from rape trauma syndrome is not admissible to prove that the witness was raped. We emphasize that our conclusion in this regard is not intended to suggest that rape trauma syndrome is not generally recognized or used in the general scientific community from which it arose, but only that it is not relied on in that community for the purpose for which the prosecution sought to use it in this case, namely, to prove that a rape in fact occurred. Because the literature does not even purport to claim that the syndrome is a scientifically reliable means of proving that a rape occurred, we conclude that it may not properly be used for that purpose in a criminal trial." 36 Cal 3d 251.

We agree with the reasoning of the *Bledsoe* court and hold that evidence of rape trauma syndrome is not admissible, in the context of this case, to prove that a rape in fact occurred. However, we do not mean to imply that evidence of emotional and psychological trauma suffered by a complaining witness in a rape case is inadmissible. Such evidence is relevant and jurors are fully

competent to consider such evidence in determining whether a rape occurred, but it should not be presented with an aura of scientific reliability unless the *Frye* test is met. We also express no opinion as to the propriety of admitting evidence about rape trauma syndrome when consent is the defense.

We next address the admission at trial of hearsay statements made by the victim and testified to by her mother. Over defense objection, the statements were admitted pursuant to the excited utterance exception to the hearsay rule, MRE 803(2). *People v Gee,* 406 Mich 279, 282; 278 NW2d 304 (1979). While the victim was still upset and nervous when she spoke with her mother at 1 a.m., a considerable period of time had passed since the assault. Also, some of the statements appear to have been made as the result of the mother's questioning and thus lack the requisite spontaneity. See *People v McConell,* 420 Mich 852; 358 NW2d 895 (1984). It was, therefore, incumbent on the trial judge to determine whether an adequate foundation existed to permit admission of the statements. Instead, that decision was left to the jury when it was instructed to determine whether or not the victim had a sufficient opportunity to fabricate. Upon retrial, the judge must either find a more adequate foundation to admit the statements under the excited utterance exception to the hearsay rule or they must be excluded.

During his closing argument the prosecutor came dangerously close to giving an impermissible "civic duty" argument. *People v Boles,* 127 Mich App 759, 769; 339 NW2d 249 (1983). We advise caution at retrial. Also we admonish the prosecutor not to equate defendant with Sirhan Sirhan and James *(sic)* Manson when discussing the pre-

sumption of innocence. *Taylor v Kentucky,* 436 US 478, 486; 98 S Ct 1930; 56 L Ed 2d 468 (1978).

Finally, defendant alleges that other children who were napping in the same room as the victim at the time the alleged sexual asault took place should have been indorsed and called as res gestae witnesses. Upon retrial, the defendant will have ample opportunity to raise this issue if the prosecutor does not indorse the children.

Reversed and remanded.