PEOPLE v BADOUR

Docket No. 94184. Submitted November 17, 1987, at Detroit. Decided March 9, 1988. Leave to appeal applied for.

Carol A. Badour was convicted following a jury trial in the Bay Circuit Court of first-degree criminal sexual conduct. The trial court, William J. Caprathe, J., sentenced defendant to from thirty to sixty years imprisonment. Defendant appealed.

The Court of Appeals *held:*

1. The trial court did not abuse its discretion: in denying defendant's request to dismiss a prospective juror for cause; in ruling that the victim's testimony at the preliminary examination could be introduced at trial; and in admitting the testimony of the prosecution's expert witness regarding child behavior following alleged sexual abuse.

2. Error requiring reversal did not occur from the prosecutor's questioning of defendant regarding the victim's truthfulness.

3. The trial court did not base its sentence on defendant's refusal to admit guilt. The sentence imposed does not shock the conscience of the Court of Appeals.

Affirmed.

1. JURY — DISQUALIFICATION OF JURORS.

Jurors are presumed to be competent and impartial and the burden of proving otherwise is on the party seeking disqualification.

2. JURY — DISQUALIFICATION OF JURORS — COURT RULES.

The decision to excuse a prospective juror for cause is within the

REFERENCES

Am Jur 2d, Criminal Law §§ 527, 679-691.

Am Jur 2d, Evidence §§ 249 *et seq.*

Am Jur 2d, Jury §§ 96-114, 120-123.

Am Jur 2d, Witnesses §§ 416, 417, 433.

Excusing, on account of public, charitable, or educational employment, one qualified and not specifically exempted as juror in state criminal case, as ground of complaint by accused. 99 ALR3d 1261.

Supreme Court's construction of Seventh Amendment's guaranty of right to trial by jury. 40 L Ed 2d 846.

trial court's discretion; where a party shows that a prospective juror comes within one of the categories enumerated in the court rule regarding the dismissal of prospective jurors, the trial court is without discretion to retain the juror and must excuse him for cause (MCR 2.511[D]).

3. CRIMINAL LAW — JURY — APPEAL.

An impartial jury is all that a defendant is entitled to and when he has obtained that he has no valid ground for complaint regarding the use of his peremptory challenges.

4. TRIAL — EVIDENCE — APPEAL.

A trial court's determination that the entire context of a given pretrial statement is admissible to explain the statement is reviewable under the abuse of discretion standard; rulings on relevancy are reviewable under the same standard.

5. WITNESSES — EXPERT WITNESSES.

The determination as to qualification and admissibility of the testimony of an expert is within the trial court's discretion.

6. PROSECUTING ATTORNEYS — WITNESSES — IMPROPER QUESTIONING.

It is improper for a prosecutor to ask the defendant to comment on the credibility of prosecution witnesses; such improper questioning may be determined not to be error requiring reversal where the defendant suffered no prejudice thereby and failed to make a timely objection in order to preclude further questioning or to obtain a cautionary instruction.

7. CRIMINAL LAW — SENTENCING — REFUSAL TO ADMIT GUILT — LACK OF REMORSE.

A trial court may not base its sentence, in whole or in part, on a defendant's refusal to admit guilt; lack of remorse may be considered in determining a defendant's potential for rehabilitation.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *George B. Mullison*, Prosecuting Attorney, and *Martha G. Mettee*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Richard B. Ginsberg*), for defendant.

Before: MacKenzie, P.J., and Doctoroff and P. J. Clulo,* JJ.

Per Curiam. Defendant was convicted by a jury of first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2), under an aiding and abetting theory. Defendant's motion for new trial was subsequently denied. She was sentenced to a term of from thirty to sixty years imprisonment. Defendant appeals as of right. We affirm.

Defendant's conviction arises out of an incident involving her six-year-old daughter. According to the testimony of the daughter, defendant had held down her arms and legs so that Roy Erving, defendant's ex-boyfriend, could orally penetrate her.

I

Defendant's first claim of error is that the trial court abused its discretion by denying her request to dismiss a prospective juror for cause. Specifically, defendant asserts that venireman James Anderson should have been excused due to bias and the appearance of impropriety.

The trial court has an obligation to safeguard a defendant's right to a fair trial before an impartial jury. See *People v Gardner,* 37 Mich App 520, 527-528; 195 NW2d 62 (1972), lv den 387 Mich 771 (1972). Jurors are presumed to be competent and impartial and the burden of proving otherwise is on the party seeking disqualification. *McNabb v Green Real Estate Co,* 62 Mich App 500, 505; 233 NW2d 811 (1975).

The dismissal of prospective jurors is governed by MCR 2.511(D).[1]

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCR 2.511(D) provides in relevant part:

If a party shows that a prospective juror comes within one of this court rule's enumerated categories, the trial court is without discretion to retain the juror, who must be excused for cause. *People v Lamar,* 153 Mich App 127, 134-135; 395 NW2d 262 (1986). Otherwise, the decision to excuse for cause is within the discretion of the trial court. *People v Walker,* 162 Mich App 60, 64; 412 NW2d 244 (1987). In this case, venireman Anderson stated during voir dire that he was a personal friend of prosecution witness Gary Wiedyk and had known him for approximately fifteen years. He indicated that Wiedyk discussed many work-related cases with him when they socialized, but had never discussed the present case, whereupon defense counsel challenged him for cause.

The trial court then questioned Anderson, who indicated that he could give the same weight to Wiedyk's testimony as he did to that of other witnesses and did not know of any reason why he would not be a proper juror. The trial court then denied defendant's request to dismiss Anderson for cause. Subsequently, defense counsel dismissed Anderson through exercise of a peremptory challenge.

In *Wilson v Ex-Cell-O Corp,* 12 Mich App 637; 163 NW2d 492 (1968), lv den 382 Mich 760 (1969), the defendant challenged three veniremen for cause. After the trial court refused to excuse them,

---

The parties may challenge jurors for cause, and the court shall rule on each challenge. A juror challenged for cause may be directed to answer questions pertinent to the inquiry. It is grounds for a challenge for cause that the person:

\* \* \*

(3) is biased for or against a party or attorney;

(4) shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be.

the defendant later excused them through peremptory challenges. This Court first noted:

> "An impartial jury is all that a party is entitled to, and when he has obtained that he has no valid ground for complaint." *Pearce v Quincy Mining Co* (1907), 149 Mich 112, 116, 117 [112 NW 739]. [*Id.*, pp 641-642.]

The Court then held that, since the prospective jurors were, in fact, excused, defendant could not complain that it did not have an impartial jury.

In the present case, defendant does not argue that she was denied an impartial jury. Rather, she asserts that reversal of her conviction is required because she was forced to use her final peremptory challenge to excuse Anderson and was, thus, unable to challenge other prospective jurors during voir dire. We find that *Wilson* applies with equal force to a criminal proceeding. Our review of the record indicates no abuse of the trial court's discretion. Defendant did not overcome the presumption that Anderson was impartial and competent.

II

Defendant next claims that the trial court abused its discretion by ruling that if defense counsel impeached the victim with a statement she made at the preliminary examination, a statement in which she said that she did not know whether she was telling the truth, then the prosecutor could introduce the rest of her testimony from the transcript that was relevant to the question that elicited that response. The testimony relevant to defense counsel's question concerned questions regarding other alleged sexual acts involving defendant and other men which apparently confused the child such that she had trouble

understanding what she had been asked.[2] Defense counsel brought out neither the question nor the response during cross-examination. Defendant further asserts that the other acts evidence was more prejudicial than probative, that there was a less prejudicial way of rehabilitating the witness, and that she was prevented from confronting her accusers.

A trial court's determination that the entire context of a given pretrial statement is admissible to explain the statement is reviewable under the abuse of discretion standard. See *Moody v Pulte Homes, Inc,* 423 Mich 150, 162; 378 NW2d 319 (1985). Rulings on relevancy are reviewable under the same standard. See *People v Flanagan,* 129 Mich App 786, 792-793; 342 NW2d 609 (1983).

MRE 106 provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

In this case, the trial court only allowed the preliminary examination transcript to be admitted in order to explain the victim's apparent confusion in light of the complexity of the questions posed to her and to prevent her statement from being taken out of context. This ruling was consistent with MRE 106.

Therefore, defendant's claim that there was a less prejudicial way of rehabilitating the witness

---

[2] The trial court had previously denied the prosecutor's request to admit evidence of the other acts, ruling that it would be admissible if the testimony became probative of "the credibility of the witness, or understanding why the witness may have brought in some other factors that aren't related to this particular case inadvertently."

fails. Further, the prejudicial effect to defendant would not outweigh the fairness to the witness of ensuring that the jury heard her statement as well as heard the context in which it was made.

Our review of the record shows defendant's claim that she was denied the opportunity to confront her accusers to be without merit. We find no abuse of the trial court's discretion in ruling on this evidentiary issue.

### III

Defendant's next claim of error is that she was denied a fair trial because a prosecution expert witness implicitly vouched for the victim's credibility. She asserts that the testimony was presented in such a way as to act as proof that sexual abuse had occurred, which was violative of MRE 702.

The prosecutor contends that the trial court did not abuse its discretion by admitting the testimony because the expert never testified regarding rape trauma syndrome or other scientific theories and never indicated that she felt the victim was telling the truth. The prosecutor asserts, as was asserted at trial, that the testimony was used in order to show how information regarding the sexual abuse came to the attention of the authorities.

The admission of evidence is within the sound discretion of the trial court and will not be set aside absent an abuse of that discretion. *People v Leach,* 114 Mich App 732, 736; 319 NW2d 652 (1982). The determination as to qualification and admissibility of the testimony of an expert is also within the trial court's discretion. *People v Hernandez,* 84 Mich App 1, 18; 269 NW2d 322 (1978).

MRE 702 provides:

If the court determines that recognized scien-

tific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In support of her position, defendant relies principally on *People v Pullins,* 145 Mich App 414; 378 NW2d 502 (1985), in which the victim's therapist testified concerning "rape trauma syndrome" and stated that the victim's symptoms were consistent with those of a person who had been raped. *Id.,* p 419. The panel noted:

> Michigan adheres to the traditional test governing the admissibility of scientific evidence as originally set forth in *Frye v United States,* 54 US App DC 46, 47; 293 F 1013 (1923):
>
> "[W]hile courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." [*Id.,* p 420.]

The Court then held that evidence of rape trauma syndrome is not admissible to prove that a rape occurred:

> However, we do not mean to imply that evidence of emotional and psychological trauma suffered by a complaining witness in a rape case is inadmissible. Such evidence is relevant and jurors are fully competent to consider such evidence in determining whether a rape occurred, but it should not be presented with an aura of scientific reliability unless the *Frye* test is met. [*Id.,* pp 421-422.]

Several other panels of this Court have ad-

dressed the same issue regarding expert testimony in these matters. In *People v Matlock,* 153 Mich App 171; 395 NW2d 274 (1986), the defendant's conviction was reversed on the ground that the victim's rape counselor vouched for the credibility of the victim. Specifically, the rape counselor testified that of the more than one hundred patients (which would include the victim) she had treated over a four-year period, she had never encountered a lying child. Further, on two occasions the counselor expressed her opinion that children do not lie about sexual abuse, at one time stating that it was her "personal opinion" and later stating "I just believe."

In *People v Draper,* 150 Mich App 481; 389 NW2d 89 (1986), this Court found that the trial court did not abuse its discretion by admitting expert testimony of what indicators are used in the field of psychology to determine whether a child has been sexually abused:

> Their testimony concerning the characteristics normally found in sexually abused children assisted the jury in understanding the evidence. Also, the practice of psychology is a field where knowledge belongs more to experts than to the common man. The challenged expert witness testimony was therefore properly admitted under MRE 702. *Cook v City of Detroit,* 125 Mich App 724, 735; 337 NW2d 277 (1983). [*Id.,* p 488.]

In *People v Skinner,* 153 Mich App 815; 396 NW2d 548 (1986), this Court found the defendant's reliance on *Pullins, supra,* to be misplaced:

> In the present case, there was no claim by Jalovaara that the characteristics exhibited by the victim conclusively established that she had been raped. Quite the opposite, Jalovaara stated that,

although the profile consisted of behavioral characteristics that generally indicated sexual abuse, manifestation of those symptoms did not conclusively establish that abuse had, in fact, occurred. *Pullins, supra,* does not apply to the instant case. Jalovaara's testimony regarding the profile of sexually-abused children was properly admitted. [*Skinner, supra,* p 823.]

In a recent case, *People v Stricklin,* 162 Mich App 623; 413 NW2d 457 (1987), the defendant sought to admit the deposition of a child psychologist to support his claim that a child who has been sexually molested would be likely to fantasize instances of sexual abuse. The trial court excluded the evidence on the basis that the child's credibility was a matter to be determined by the jury. In reversing the defendant's conviction and remanding for a new trial, this Court held:

Although an expert cannot be used as a human lie detector to give a stamp of scientific legitimacy to the truth of the witness' statement, *People v Izzo,* 90 Mich App 727, 730; 282 NW2d 10 (1979), an expert can testify as to the traits or characteristics of sexually abused children if such testimony will assist the jury in understanding the evidence. *People v Draper,* 150 Mich App 481, 487-488; 389 NW2d 89 (1986). Assuming that the psychologist's testimony would have been based on his knowledge of child development and not on an evaluation of the female child's credibility, it cannot be said that he would have usurped the jury's responsibility for determining credibility. *In re Rinesmith,* 144 Mich App 475, 482; 376 NW2d 139 (1985). Upon retrial, Richard Stricklin should be permitted to introduce the expert's testimony, provided the trial judge is convinced that the appropriate foundation has been established. [*Id.,* p 637.]

In the present case, the expert, Lynn Butterfield,

testified regarding the types of things she looked for in order to tell whether a child had been sexually abused. She also testified about what she did to make sure that the statements concerning abuse that the victim made to her were, in fact, coming from the victim. This included speaking with the victim at various times and noting consistencies in what the victim told her. She also noted "the things that I had looked for, you know, were present with her."

On cross-examination, Butterfield indicated that some of the characteristics of a sexually-abused child could also arise when a child is put in a foster home.[3] She also stated that just because a child says she has been sexually abused does not necessarily make it true.

Butterfield did not testify regarding rape trauma syndrome. *Pullins, supra.* Nor did she vouch for the victim's credibility, but went so far as to indicate that just because a child says that she has been abused does not necessarily make it true. *Matlock, supra.* See also *People v Smith,* 425 Mich 98; 387 NW2d 814 (1986). She testified, rather, as to child behavior following alleged sexual abuse. *Draper, supra.* See also *People v Beckley,* 161 Mich App 120, 128; 409 NW2d 759 (1987). We find no abuse of the trial court's discretion in admitting Butterfield's testimony.

IV

Defendant claims that she was denied a fair trial when the prosecutor posed several questions to her during cross-examination regarding the victim's truthfulness. She contends that the prosecutor compounded the error by commenting on the

---

[3] When Butterfield met the victim in January, 1985, the child was in foster care.

testimony during closing argument. We note initially that defendant objected to neither the questions posed nor the closing argument.

We find *People v Buckey,* 424 Mich 1; 378 NW2d 432 (1985), to be dispositive of the issue regarding the prosecutor's cross-examination questions. In *Buckey,* the prosecutor appealed from this Court's reversal of the defendant's conviction. At trial, the prosecutor had asked the defendant to comment on the credibility of the prosecution witnesses. Although defendant had failed to object to the questioning, this Court had reversed. 133 Mich App 158, 166; 348 NW2d 53 (1984). The Supreme Court held:

> We agree with the Court of Appeals that it was improper for the prosecutor to ask defendant to comment on the credibility of prosecution witnesses. Defendant's opinion of their credibility is not probative of the matter. However, we do not agree that the error resulted in unfair prejudice to defendant. [424 Mich 17.]

The Supreme Court reinstated the conviction on two grounds. First, the Supreme Court was unpersuaded that defendant had suffered any prejudice. Second, the Court cited defendant's failure to object at trial. The Court adopted the concurring opinion of Judge CYNAR that " '[a] timely objection by defense counsel could have cured any prejudice, either by precluding such further questioning or by obtaining an appropriate cautionary instruction.' " *Id.,* p 18, quoting 133 Mich App 167.

Our review of the record fails to reveal that defendant suffered prejudice. Defendant qualified her answers, even stating at one point that "it's hard to believe that she was sexually abused." Further, a timely objection was never made in order to preclude further questioning or to obtain

a cautionary instruction, *Buckey, supra.* Accordingly, we find no error requiring reversal.

Turning to the prosecutor's closing argument, the prosecutor summarized defendant's cross-examination testimony, which he was allowed to do. Defendant's lack of objection precludes appellate review unless failure to do so would result in manifest injustice. *People v Kvam,* 160 Mich App 189, 199; 408 NW2d 71 (1987). Because the remarks do not meet this standard, we decline to review them.

v

Defendant's last claim of error is that the trial court abused its sentencing discretion by departing from the sentencing guidelines based in part on her refusal to admit guilt coupled with the fact that she had also been a victim of child abuse. She asserts that the thirty to sixty year sentence, imposed even though she had no prior record, shocks the conscience.

On review of an exercise of a trial court's sentencing discretion, we may afford a defendant relief if we find that the trial court abused its discretion such that it shocks our conscience. *People v Coles,* 417 Mich 523, 550; 339 NW2d 440 (1983). The sentence imposed must be tailored to the particular circumstances of the case and the offender in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential. *People v McFarlin,* 389 Mich 557, 574; 208 NW2d 504 (1973).

Departures from the sentencing guidelines are both encouraged and permitted. *People v Purzycki,* 143 Mich App 108, 109; 371 NW2d 490 (1985). The reasons for departure from the sentencing guidelines must be articulated at sentencing and placed

on the sentencing information report. *People v Fleming,* 428 Mich 408, 428-429; 410 NW2d 266 (1987). A trial court's reasons for departing from the recommended range can be factors already considered by the guidelines. *People v Wyngaard,* 151 Mich App 107, 114; 390 NW2d 694 (1986).

A trial court cannot, however, base its sentence, in whole or in part, on a defendant's refusal to admit guilt. *People v Yennior,* 399 Mich 892; 282 NW2d 920 (1977). However, lack of remorse can be considered in determining a defendant's potential for rehabilitation. See *People v Wesley,* 428 Mich 708, 711; 411 NW2d 159 (1987); *People v Ronald Crawford,* 161 Mich App 77, 82; 409 NW2d 729 (1987). The distinction between a sentence based on a refusal to admit guilt and a sentence based on the resultant reduction in the potential for rehabilitation is subtle. *Wesley, supra,* p 727. As stated by Justice ARCHER in *Wesley:*

> While this Court has never specifically addressed the issue, in determining whether sentencing was improperly influenced by defendant's failure to admit guilt, the Court of Appeals has focused upon three factors: (1) the defendant's maintenance of innocence after conviction, (2) the judge's attempt to get the defendant to admit guilt, and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe. See, e.g., *People v Gray,* 66 Mich App 101; 238 NW2d 540 (1975); *People v Grable,* 57 Mich App 184; 225 NW2d 724 (1974); *People v Fleming,* 142 Mich App 119, 127; 369 NW2d 499 (1985). Under the Court of Appeals analysis, if there is an indication of the three factors, then the sentence was likely to have been improperly influenced by the defendant's persistence in his innocence. If, however, the record shows that the court did no more than address the factor of remorsefulness as it bore upon defendant's rehabilitation,

then the court's reference to a defendant's persistent claim of innocence will not amount to error requiring reversal. [*Id.,* p 713.]

In the present case, the trial court told defendant that she could rightfully stand upon her claim of innocence even though she had been convicted of the offense. He noted, however, that there was no indication that defendant could be rehabilitated through counseling or other procedures since she denied that the offense had occurred. Our review of the record does not indicate that the trial court attempted to get defendant to admit guilt or gave the appearance that the sentence would not have been so severe if she had admitted guilt. The trial court was concerned with defendant's failure to appreciate the detrimental effect of her actions rather than her failure to admit guilt.

The trial court also mentioned defendant's own history of abuse as a child. The court indicated that it was considering the view that one must understand why a person abuses others after being abused herself. The court noted, however, that the converse is also true and the fact that she was abused makes it more likely that she will abuse again unless she is rehabilitated. Contrary to defendant's assertion that the trial court turned "her own victimization into a means of enhancing her sentence," we find that the trial court considered this fact and how it bore on rehabilitation.

We note that the trial court articulated permissible reasons for imposition of the thirty to sixty year sentence. In addition to the reasons previously discussed, the trial court also considered the protection of society, the protection of the child, and the deterrence to defendant and others. See *Coles, supra; People v Snow,* 386 Mich 586, 592;

194 NW2d 314 (1972). While we may not have imposed the same sentence had we sat as trial judges, the appellate review of a sentence does not have for a purpose another substitute sentence and another subjective exercise of discretion. *People v James Crawford,* 144 Mich App 86, 89-90; 372 NW2d 688 (1985). After reviewing the record, we find no abuse of the trial court's sentencing discretion and our collective conscience is not shocked.

Affirmed.