*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARK ANTHONY WILLIAMS,

Defendant-Appellant.

UNPUBLISHED
March 28, 2019

No. 339222
Macomb Circuit Court
LC No. 2016-003545-FC

Before: TUKEL, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b)(*i*), and one count of administering drugs or a substance to procure a miscarriage (criminal abortion), MCL 750.14. Defendant was sentenced to concurrent terms of 30 to 50 years' imprisonment for his CSC-I convictions and two to four years' imprisonment for his criminal abortion conviction. We affirm.

Defendant's convictions arise from his alleged sexual abuse of his minor stepdaughter over the course of approximately 10 years. After the victim ran away from home in February 2016, at the age of 17, she reported to police that she had been sexually abused by defendant since she was seven years old, with the abuse escalating to sexual penetration when she was 12 years old. The victim described numerous acts of sexual penetration and further testified that defendant threatened to kill her if she reported the abuse to anyone. According to the victim, as a result of defendant's sexual contact, she became pregnant at the age of 16. In an effort to abort the pregnancy, defendant allegedly stepped on the victim's back and stomach, made her drink castor oil, and ultimately gave her an abortion-inducing drug he purchased over the internet, which terminated the pregnancy. When the victim disclosed the abuse to Tabitha Barton, her mother, Barton did not believe her and, in fact, testified at trial in favor of defendant.

## I. PREVIOUS ACCUSATIONS

On appeal, defendant first contends that defense counsel provided ineffective assistance by failing to cross-examine the victim regarding whether she had previously made false accusations of sexual abuse against other individuals. Before trial began, the parties disputed

-1-

whether defense counsel should be permitted to question the victim on this matter. However, after conducting further research on the issue, defense counsel conceded that Michigan's rape-shield statute, MCL 750.520j, would prohibit the question. Defendant now argues that defense counsel's failure to cross-examine the victim on this topic amounted to ineffective assistance by depriving him of a viable defense. We disagree.

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). This Court generally reviews the trial court's factual findings for clear error and its constitutional determinations de novo. *Id*. However, defendant failed to preserve this issue by moving for a new trial or an evidentiary hearing. See *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). "Where claims of ineffective assistance of counsel have not been preserved, our review is limited to error apparent on the record." *Matuszak*, 263 Mich App at 48.

To successfully assert a claim of ineffective assistance of counsel, a defendant must show "that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (quotation marks and citation omitted). A court's review of counsel's performance is highly deferential, and, in order to prevail, a defendant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant also bears the burden of establishing the factual predicate for his claim of ineffective assistance. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

Michigan's rape-shield statute, MCL 750.520j, "with certain specific exceptions, was designed to exclude evidence of the victim's sexual conduct with persons other than [the] defendant." *People v Arenda*, 416 Mich 1, 10-11; 330 NW2d 814 (1982). Although the statute generally precludes admission of such evidence for purposes such as demonstrating the victim's character, it does not prevent its admission for other permissible purposes. *People v Hackett*, 421 Mich 338, 348; 365 NW2d 120 (1984). In particular, our Supreme Court has held that "testimony concerning prior false allegations [of sexual abuse] does not implicate the rape shield statute." *People v Jackson*, 477 Mich 1019, 1019; 726 NW2d 727 (2007). Indeed, previous false allegations of sexual abuse are highly relevant to the credibility both of the victim and of the victim's subsequent accusations. *People v Williams*, 191 Mich App 269, 272; 477 NW2d 877 (1991). Consequently, evidence demonstrating that the victim previously made false accusations of sexual abuse would not have been barred under the rape-shield statute.

Before evidence of a victim's prior false accusations of sexual assault may be admitted, however, the defendant must first make an offer of proof justifying its introduction. *Williams*, 191 Mich App at 273, citing *Hackett*, 421 Mich at 350. Specifically, the defendant must offer proof with respect to the proposed evidence and demonstrate its relevance to a permissible purpose. *Id*. The trial court should, if necessary, conduct an evidentiary hearing to determine whether the evidence is admissible and to ensure that the scope of the cross-examination is limited "to prevent questions that would harass, annoy, or humiliate the victim and to guard against fishing expeditions." *Id*.

In the present case, defendant did not make the requisite offer of proof by submitting *any* evidence demonstrating that the victim previously made false accusations of sexual abuse. Rather, defense counsel intended to question the victim during trial whether she had "ever accused anyone else" or "if she's accused anyone." Nor does defendant submit any evidence on appeal that the victim actually made prior false accusations. It is therefore plain that defendant impermissibly sought, in his proposed questioning of the victim, to embark on a fishing expedition in an effort to uncover prior false accusations made by the victim. See *Williams*, 191 Mich App at 274. Accordingly, because this line of questioning would be improper, defendant has failed to establish the factual predicate for his ineffective assistance claim.[1]

Moreover, even if such questioning had been permissible, defendant cannot demonstrate by a reasonable probability that the outcome of the trial would have differed had defense counsel asked the victim whether she previously made accusations of sexual abuse against other individuals. Indeed, defendant is unable to demonstrate that the victim would have testified in the affirmative, let alone admit that any such prior accusations were falsely made. Thus, we conclude that defense counsel did not provide ineffective assistance on this ground.

## II. PROSECUTORIAL MISCONDUCT

In defendant's next argument on appeal, he maintains that he was denied a fair trial as a result of prosecutorial misconduct. Specifically, defendant claims prejudicial error stemming from a question posed by the prosecutor to a defense witness and from various remarks made by the prosecutor during closing argument. Although we agree that some of the prosecutor's comments were improper, we conclude that they do not warrant reversal.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Because defendant neither requested a curative instruction following the prosecutor's improper question posed to a defense witness nor objected during the prosecutor's closing argument, these issues are unpreserved. While claims of prosecutorial misconduct are generally reviewed de novo, "[u]npreserved issues are reviewed for plain error affecting substantial rights." *Id*. An error is plain if it is "clear or obvious," while an error

---

[1] Though defendant summarily contends in his brief on appeal that he was deprived of his due process right to assert a defense on these grounds, he fails to develop any argument on such a claim. It is a basic principle of appellate practice that "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001) (quotation marks and citation omitted). However, such a claim would nonetheless fail on the merits due to defendant's failure to make the requisite offer of proof. "Although the right to present a defense is a fundamental element of due process, it is not an absolute right. The accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984) (quotation marks and citation omitted).

affects substantial rights if it prejudiced the defendant by affecting the outcome of the trial court proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error warrants reversal only if it "resulted in the conviction of an actually innocent defendant" or "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id*. at 763-764 (quotation marks and citation omitted).

Claims of prosecutorial misconduct are reviewed on a case-by-case basis in the context of the arguments and evidence presented at trial. *People v Odom*, 276 Mich App 407, 413; 740 NW2d 557 (2007). "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Prosecutors are typically afforded a great degree of latitude with respect to their arguments and conduct, *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995), and are permitted to argue the evidence and all reasonable inferences arising from the evidence, *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). When the prejudicial effect resulting from an improper prosecutorial statement could have been alleviated by a timely objection and curative instruction, reversal is not warranted. *Id*. at 235.

## A. QUESTIONING THE DEFENSE WITNESS

Defendant first argues that the prosecution inappropriately attacked the credibility of defense witness Tabitha Barton, the victim's mother and defendant's wife, by asking her, "Would you agree, ma'am, that people who protect child predators are just as bad as the predator?" This question was posed after the prosecutor asked Barton twice if she wished to reconsider her opinion that defendant was innocent in light of certain evidence related to her by the prosecutor. Defense counsel immediately objected, and the trial court sustained the objection, before the witness could provide a response.

Read in context, the prosecutor's question may reasonably be construed as an improper effort, in contravention of MRE 608, to insinuate that Barton was of disreputable character and therefore unworthy of belief. However, defendant has cited no authority supporting the conclusion that such questioning amounts to prosecutorial misconduct. Even if we were to conclude that the question constitutes misconduct, there is no evidence that this isolated and unanswered question affected the outcome of trial. Any prejudice resulting from this question was alleviated when the trial court immediately sustained the objection before the witness could respond and later instructed the jury, "At times during the trial I have excluded evidence that was offered or stricken testimony that was heard. Do not consider these things in deciding the case. Make your decision only on the evidence that I let in and nothing else." Thus, the trial court expressly instructed the jury not to consider testimony as to which an objection was sustained. Because "[w]e presume that a jury follows its instructions," *People v Armstrong*, 490 Mich 281, 294; 806 NW2d 676 (2011), we conclude that any prejudice stemming from the prosecutor's question was alleviated. Reversal therefore is not warranted.

## B. HIGH-PROFILE SEXUAL ABUSE CASES

Next, defendant challenges the following statement made by the prosecutor during his closing argument:

Now, it's sick and deprave[d] that men like this are, and cases like this they happen. In 2009, we heard about Mackenzie Phillips, singer, actress had a famous father, she went on national TV and said that she had a consensual relationship with her father; that she loved him and that he had sex with her for decades. He too got her pregnant and he too made sure that he killed that baby, just like this man. We heard about Penn State assistant couch [sic] Jerry Sandusky and the multiple boys that he was raping for years who returned to football practice, who would return to his home for sleep overs, who would return to receive[] the gifts that he was giving them, and they continued . . . to love his wife firmly supporting him in that case. Unfortunately, these things happen. But, how? They happen because of predators like [defendant] who manipulate their environment, who are opportunists, who operated with control and fear and who are experts in creating that silence.

Defendant contends that the prosecutor's comparison of the present case to these particularly egregious and high-profile sexual abuse cases was so prejudicial that he was denied a fair trial.

Generally, "[a] prosecutor may not inject unfounded and prejudicial innuendo into a trial." *Dobek*, 274 Mich App at 79. A review of this Court's caselaw demonstrates that, while references to notorious crimes or criminals can serve as grounds for reversal and should be scrupulously avoided, see *People v Kelley*, 142 Mich App 671, 673; 370 NW2d 321 (1985) (reversing first- and second-degree CSC convictions on the basis of the prosecutor's closing remarks comparing the defendant to John Wayne Gacey, a prolific serial murderer who sexually assaulted young boys); *People v Pullins*, 145 Mich App 414, 422-423; 378 NW2d 502 (1985) (reversing convictions on alternate grounds but directing the prosecutor not to refer to Charles Manson or Sirhan Sirhan on retrial), such references do not necessarily require reversal of a conviction, see *People v Ullah*, 216 Mich App 669, 681-682; 550 NW2d 568 (1996) (prosecutor's comment that the defendant should go to law school and defend O.J. Simpson was not a direct comparison requiring reversal); *People v Smith*, 122 Mich App 106, 113; 332 NW2d 428 (1982), rev'd on other grounds 417 Mich 1100 (1983) (reference to the Charles Manson murder investigation was a comment on the strength of the case and did not require reversal); *People v Rowen*, 111 Mich App 76, 82; 314 NW2d 526 (1981) (prosecutor's comment that the defendant had the same presumption of innocence as Jack Ruby could be viewed as comment on the strength of the case and could have been alleviated with a curative instruction). Ultimately, a prosecutor's potentially inflammatory references to infamous criminals must be reviewed in context to discern whether the defendant was denied a fair and impartial trial. *Bahoda*, 448 Mich at 267.

Viewed in context, the prosecutor's references to Mackenzie Phillips and Jerry Sandusky, although undoubtedly imprudent, do not warrant reversal. The remarks appear to have been designed to illustrate both how defendant's decade-long abuse of the victim did not previously come to light and that victims of sexual abuse do not always immediately report their abusers. Any prejudice aroused by the references could have been alleviated through a curative instruction; however, defendant failed to request one. This Court will not "find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Unger*, 278 Mich App at 235 (quotation marks and citation omitted). Moreover, we cannot conclude that these relatively brief references were outcome-determinative such that they affected defendant's

substantial rights. Particularly in the context of a six-day trial, the references were isolated, and it is doubtful that they "deflect[ed] the jury's attention from the evidence presented," considering the graphic testimony from the victim. See *id*. at 237. Accordingly, there is no indication that the comments resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. See *Carines*, 460 Mich at 763-764.

### C. DENIGRATING CREDIBILITY OF DEFENSE WITNESSES

Defendant also contends that the prosecutor engaged in misconduct by attacking the credibility of defendant and Barton during closing argument. Specifically, the prosecutor stated:

> When [the victim's] conduct and integrity is being matched up against [Barton's] and defendant's, individuals who took an oath and were caught in lie after lie, who were swearing on the blood of Jesus Christ[2] for some answers to questions, who were saying to some questions this real talk, let's cut the BS, "this is God honest truth," this is "God honest truth," this time, and the story evolved and the lies continued and then today was the day for absolute truth. But, the one thing that we can be sure of is that the stories were different many, many, many times over and you're going to receive a jury instruction that says rely on your common sense, did the witness have a good memory, how did the witness look and act while testifying, was the witness making an honest effort to tell the truth, did the witness have any personal interest in how this case was decided, or does the witness have any reason to lie. When you consider that instruction and you apply it to what you heard from [Barton] an[d] what you heard from the defendant, People of the State of Michigan have no problem with you matching that up with [the victim's] testimony. Please do. That's your jobs.

A prosecutor may not vouch for the credibility of his own witness by conveying his personal belief of that witness' truthfulness or by intimating that he has some special knowledge regarding the witness's truthfulness. *Bennett*, 290 Mich App at 478. However, a prosecutor is not foreclosed from arguing, based on the evidence and reasonable inferences drawn from the evidence, that a witness is either credible or not worthy of belief. *Unger*, 278 Mich App at 240 ("We fully acknowledge that prosecutorial arguments regarding credibility are not improper when based on the evidence, even if couched in terms of belief or disbelief."). Further, "[i]n general, where a defendant takes the stand and testifies in his own defense, his credibility may be impeached and his testimony assailed like that of any other witness . . . ." *People v Fields*, 450 Mich 94, 110; 538 NW2d 356 (1995) (quotation marks and citation omitted).

The prosecutor's comments quoted above were not improper. First, he did not vouch for the victim's credibility. Rather, he asked the jury to rely on their common sense and their own observations to conclude that she was credible. Second, the prosecutor was free to comment on

---

[2] The prosecutor's reference to the "blood of Jesus" related to Barton's testimony in which she used that phrase when asserting her belief in her husband's innocence.

the victim's credibility, as well as on defendant's and Barton's credibility. He did so by relying on the evidence and emphasizing the lack of consistency in defendant's and Barton's accounts. Moreover, the prosecutor was entitled to respond to defense counsel's closing argument, which portrayed the victim as a liar while urging the jury to find that defendant and his witness were telling the truth. See *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013) (holding that "[t]he prosecutor may fairly respond to defense arguments" questioning the veracity of the victim's testimony). Accordingly, these remarks do not amount to prosecutorial misconduct.

## D. DENIGRATING DEFENSE COUNSEL

Defendant's final claim of prosecutorial misconduct challenges remarks made by the prosecutor during rebuttal closing argument as disparaging toward defense counsel. Specifically, the prosecutor stated that he empathized with defense counsel "because defendants like Mr. Williams put their attorney in a position of having to argue for fantasy and that's what you just heard." Although we agree that this comment was improper, defendant was not deprived of a fair trial on this basis.

Although prosecutors are afforded great latitude with their arguments, it is well-established that a prosecutor may not personally attack defense counsel. *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003). Nor may a prosecutor suggest that defense counsel is deliberately attempting to mislead the jury. *Unger*, 278 Mich App at 236. This Court has explained:

> The prosecutor may not question defense counsel's veracity. When the prosecutor argues that the defense counsel himself is intentionally trying to mislead the jury, he is in effect stating that defense counsel does not believe his own client. This argument undermines the defendant's presumption of innocence. Such an argument impermissibly shifts the focus from the evidence itself to the defense counsel's personality. [*Id.* (quotation marks and citation omitted).]

We find that, by stating that the defense counsel was put in the sympathetic position of "having to argue for fantasy," the prosecutor improperly insinuated that defense counsel did not believe his client and therefore was deliberately attempting to mislead the jury. See *id.*; see also *People v Dalessandro*, 165 Mich App 569, 579-580; 419 NW2d 609 (1988) (finding the prosecutor's comments characterizing the defense as "red herrings" and "lies" to be improper); *People v Kent*, 157 Mich App 780, 794; 404 NW2d 668 (1987) (disapproving the prosecutor's remark that defense counsel was attempting to mislead the jury with "fairy tales" and "misleading statements"). However, defendant cannot demonstrate that this brief and isolated comment was outcome-determinative such that it affected the jury's verdict. See *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001); see also *People v Howard*, 226 Mich App 528, 545; 575 NW2d 16 (1997) (finding that the prosecutor's statement that defense counsel was "playing games" did not deny the defendant a fair trial because the remark was brief and concerned a nonmaterial subject matter). Consequently, we conclude that the prosecutor's improper comment regarding defense counsel does not warrant reversal.

E.  INEFFECTIVE ASSISTANCE

Defendant argues that defense counsel provided ineffective assistance by failing to object to the alleged prosecutorial misconduct.  To the extent the prosecutor's challenged remarks were not improper, defense counsel cannot be considered ineffective for failing to make a futile objection.  See *People v Ericksen*, 288 Mich App 192, 210; 793 NW2d 120 (2010).  With respect to defense counsel's failure to object to the prosecutor's remarks that were either improper or arguably improper, counsel may have reasonably decided not to draw attention to the comments as a matter of sound trial strategy.  See *Unger*, 278 Mich App at 242 (recognizing that "there are times when it is better not to object and draw attention to an improper comment" (quotation marks and citation omitted)).  "We will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *Id*. at 242-243.  We thus conclude that defense counsel did not provide ineffective assistance by failing to object to the prosecutor's comments.

III.  OTHER ACTS EVIDENCE

Finally, defendant contends on appeal that the trial court abused its discretion by permitting the prosecution to introduce testimony by defendant's minor son, MW, that defendant inappropriately touched him.  Defendant maintains that the evidence was unfairly prejudicial and that its admission warrants reversal and a new trial.  We disagree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion.  *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001).  "At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).  The trial court abuses its discretion when it chooses an outcome falling outside this range of reasonable and principled outcomes.  *Id*.

Although defendant's lengthy argument focuses on the constraints on the introduction of other-acts evidence imposed by MRE 404(b), the analysis in the present case is more properly governed by MCL 768.27a, which supersedes MRE 404(b).  See *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012).  Under MCL 768.27a(1), other-acts evidence is admissible under the following circumstances:

> [I]n a criminal case in which the defendant is accused of committing a listed offense[3] against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on

---

[3] A "listed offense" is defined under the statute by reference to the Sex Offenders Registration Act, MCL 28.721 *et seq*.  MCL 768.27a(2)(a).  Defendant was charged with CSC-I, MCL 750.520b(1)(b)(*i*), which qualifies as a listed offense.  See MCL 28.722(w)(*iv*).  Likewise, defendant's alleged contact with MW would amount to second-degree CSC, MCL 750.520c(1), which also qualifies as a listed offense.  See MCL 28.722(w)(*v*).

any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

Thus, MCL 768.27a permits the admission of evidence regarding a defendant's sexual abuse of other minors to prove that the defendant had the propensity to commit the charged offense. See *Watkins*, 491 Mich at 470. MW's testimony therefore was admissible under MCL 768.27a(1) for any matter to which it was relevant, including defendant's propensity toward sexually abusing his children.

However, evidence admissible under MCL 768.27a may nonetheless be excluded under MRE 403 if " 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .' " *Id*. at 481, quoting MRE 403. In evaluating whether admissible evidence is unfairly prejudicial, courts must consider the tendency of the evidence to "inject[] considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock," as well as the danger that "marginally probative evidence will be given undue or preemptive weight by the jury." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (quotation marks and citations omitted). Additionally, our Supreme Court has enumerated several considerations for the trial court to weigh when balancing the probative value versus the prejudicial effect of MCL 768.27a evidence:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

We conclude that the probative value of MW's testimony was not substantially outweighed by the danger of unfair prejudice. First, the evidence was highly relevant because it established that defendant had the propensity to sexually assault his children. See *id*. at 487 ("[C]ourts must weigh the propensity inference *in favor of the evidence's probative value* rather than its prejudicial effect." (emphasis added)). Indeed, with respect to the factors set forth in *Watkins*, defendant's alleged acts of sexual abuse against the victim and MW were not remote in time and were similar insofar as they involved defendant's inappropriate sexual contact with his own children, beginning at a young age. Moreover, MW's testimony provided crucial evidence corroborating the victim's allegations in the absence of physical evidence or eyewitness testimony. Although the reliability of MW's testimony was questionable in light of his young age and apparent confusion, the other factors weigh in favor of admission. Second, MW's testimony was not inflammatory, as he merely stated that defendant inappropriately touched him, without providing any level of detail. Nor did the prosecutor reference MW's testimony during closing argument. The trial court adequately instructed the jurors regarding the proper consideration of this other-acts evidence, including the instruction that "[y]ou must not convict

the defendant here solely because you think he is guilty of other bad conduct." See *id*. at 490. Accordingly, MW's testimony was substantively admissible.[4]

Procedurally, MCL 768.27a(1) contains a notice provision instructing the prosecutor to disclose other-acts evidence, including witness statements or the substance of witness testimony, to the defendant at least 15 days in advance of trial. In this case, the prosecution filed before trial a written notice of intent to introduce other-acts evidence; however, that notice only pertained to testimony by the victim concerning uncharged sexual abuse perpetrated by defendant in another jurisdiction. Defendant therefore contends that he did not have adequate pretrial notice of MW's expected testimony.

The record, however, indicates that defense counsel did have notice of MW's expected testimony. After defense counsel objected to MW's testimony during trial, the trial court stated that, while it received formal notice of intent only with respect to the victim's testimony, it understood that defense counsel was aware of MW's allegations. Defense counsel agreed, stating that he "had received the evidence, just not formal notice." The prosecutor explained that evidence of MW's allegations was disclosed in discovery materials provided to defense counsel and that he had provided notice when he discussed the testimony with defense counsel both personally and through e-mail. Defense counsel agreed. The terms of MCL 768.27a do not expressly require formal written notice,[5] and defense counsel acknowledged on the record that he received the relevant evidence, as well as informal notice, directly from the prosecutor. Therefore, defendant's argument that he was not provided notice is without merit.

Even if we were to conclude that the pretrial notice was procedurally deficient, reversal would not be warranted. In *People v Jackson*, 498 Mich 246, 278; 869 NW2d 253 (2015), our Supreme Court discussed the notice requirements of MRE 404(b)(2), which are similar to the notice requirements of MCL 768.27a. There, the prosecutor provided no notice to the defendant; however, the Court found that the error was not outcome-determinative, explaining:

> [T]he lack of proper pretrial notice did not result in the admission of substantively improper other-acts evidence. Thus, although the defendant was not afforded his due opportunity to marshal arguments against its admission before it was introduced at trial, he has not shown that any such arguments would have been availing, or would have affected the scope of testimony ultimately presented to the jury. Furthermore, while the defendant suffered unfair surprise from the unexpected introduction of this testimony at trial, he was admittedly aware of [the witness's] general version of events before trial . . . and he has not demonstrated

---

[4] Because the other-acts evidence was admissible, we reject defendant's claim that the prosecutor committed misconduct by introducing "irrelevant or overtly prejudicial evidence."

[5] Compare MCL 768.27a ("[T]he prosecuting attorney *shall disclose the evidence* to the defendant at least 15 days before the scheduled date of trial . . . ." (emphasis added)) with MRE 404(b)(2) ("The prosecution in a criminal case *shall provide written notice* at least 14 days in advance of trial . . . ." (emphasis added)).

how he would have approached trial or presented his defense differently had he known in advance that [the witness] would be permitted to testify as she did. . . . He also has not suggested that he would have altered or abandoned his [defense] theory . . . . We therefore cannot conclude that the defendant suffered outcome-determinative prejudice from the prosecution's failure to follow, and the trial court's failure to apply, MRE 404(b)(2). [*Id*. at 278-279 (quotation marks and citations omitted.)]

We reach a similar conclusion in the present case. MW's testimony was substantively admissible under MCL 768.27a. In contrast to *Jackson*, defense counsel was aware of MW's allegations, as well as the prosecution's intent to introduce these allegations as evidence. Defendant therefore did not suffer "unfair surprise," nor was he deprived of an opportunity to "marshal arguments against its admission." See *id*. at 278. Furthermore, defendant does not explain on appeal how he would have altered his trial strategy or defense theory had he been provided formal written notice, as opposed to informal notice. The lack of formal written notice of the prosecution's intent to introduce MW's testimony as other-acts evidence therefore does not amount to an error requiring reversal. We conclude that the trial court did not abuse its discretion in admitting MW's testimony.

Affirmed.


/s/ Jonathan Tukel
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola