PEOPLE v JERRY SMITH

Docket No. 45045. Submitted May 6, 1982, at Lansing.—Decided
    December 20, 1982. Leave to appeal applied for.

Jerry W. Smith was convicted of first-degree murder, Washtenaw
    Circuit Court, Ross W. Campbell, J. Defendant appealed alleg-
    ing numerous errors. *Held:*

    1. Identification of the defendant by a witness was made at a
    pretrial lineup and again at trial. The court suppressed the
    pretrial lineup identification. The factors supporting an inde-
    pendent basis for an in-court identification of a defendant by a
    witness when a pretrial identification has been rendered in-
    valid must be totally unrelated to any pretrial confrontation
    and may include factors such as consideration of the witness's
    opportunity for observation during the crime, prior knowledge
    of the defendant's identity, accuracy of description, any discrep-
    ancy between a pre-lineup description and actual appearance of

REFERENCES FOR POINTS IN HEADNOTES

[1] 21A Am Jur 2d, Criminal Law §§ 803, 956.

    29 Am Jur 2d, Evidence §§ 367, 371, 372.

    Validity, under Federal constitution, of police lineup or showup
        procedures—Supreme Court cases. 34 L Ed 2d 839

    Admissibility of evidence of linup identification as affected by
        allegedly suggestive lineup procedures. 39 ALR3d 487.

    Admissibility of evidence of showup identification as affected by
        allegedly suggestive showup procedures. 39 ALR3d 791.

    Admissibility of evidence as to extrajudicial or pretrial identifica-
        tion of accused. 71 ALR2d 449.

[2] 4 Am Jur 2d, Appeal and Error § 166.

[3] 73 Am Jur 2d, Prosecuting Attorneys § 26.

    75 Am Jur 2d, Trial § 260.

[4] 29 Am Jur 2d, Evidence §§ 722, 1148.

    81 Am Jur 2d, Witnesses §§ 2, 3, 103.

    Court's witnesses (other than expert) in criminal prosecution. 67
        ALR2d 538.

[5] 29 Am Jur 2d, Evidence § 787.

    30 Am Jur 2d, Evidence §§ 1178.

    40 Am Jur 2d, Homicide §§ 290, 417-419.

    Admissibility of photograph of corpse in prosecution for homicide or
        civil action for causing death. 73 ALR2d 769.

[5] Admissibility in evidence of colored photographs. 53 ALR2d 1102.

the defendant, identification of any other person prior to the lineup, failure to identify the defendant on a prior occasion, the lapse of time between the crime and the lineup identification, and any idiosyncratic or special features of the defendant. The court's allowance of the in-court identification was not clearly erroneous.

2. The prosecutor's reference to Charles Manson during closing argument was in the context of commenting on the strength of his case, which is permissible.

3. The duty of the people to call res gestae witnesses does not extend to accomplices, even accomplices who have been previously acquitted. The prosecutor did not err in not calling an accomplice who had been previously acquitted.

4. The trial court erred in admitting gruesome photographs of the victim, who had been killed by a shotgun blast. The fact and manner of death of the victim were not disputed. Defendant's defense was alibi. The photographs were neither substantially necessary nor instructive to show a material fact and were introduced only to excite the jury's passion and prejudice. Admitting those photographs caused a manifest injustice.

Reversed and remanded.

1. CRIMINAL LAW — WITNESSES — IDENTIFICATION.

The factors supporting an independent basis for an in-court identification of a defendant by a witness when a pretrial identification has been rendered invalid must be totally unrelated to any pretrial confrontation, and may include factors such as consideration of the witness's opportunity for observation during the crime, prior knowledge of the defendant's identity, accuracy of description, any discrepancy between a pre-lineup description and actual appearance of the defendant, identification of any other person prior to the lineup, failure to identify the defendant on a prior occasion, the lapse of time between the crime and the lineup identification, and any idiosyncratic or special features of the defendant.

2. APPEAL — EVIDENCE — SUPPRESSION HEARING — CRIMINAL LAW.

An appellate court should refrain from overturning the ruling of a lower court at a hearing on the suppression of evidence unless the lower court's ruling is clearly erroneous.

3. PROSECUTING ATTORNEYS — CLOSING ARGUMENT — PROSECUTORIAL COMMENTS.

A prosecutor may comment upon the evidence and the strength of his case.

4. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — ACCOM-
    PLICES.

   The duty of the people to call res gestae witnesses does not
   extend to accomplices, even accomplices who have been previ-
   ously acquitted.

5. CRIMINAL LAW — HOMICIDE — MURDER — EVIDENCE — PHOTO-
    GRAPHS — PREJUDICE — ALIBI — APPEAL AND ERROR.

   Admitting photographs of the victim into evidence in a case in
   which the defendant was charged with murder was reversible
   error where defendant's appropriately filed notice of alibi and
   his consistent reliance on alibi as his defense, coupled with the
   unrebutted proof that the victim was killed by a shotgun blast,
   rendered the use of those photographs neither substantially
   necessary nor instructive to show material facts or conditions
   and there was no other reason for their use than to excite
   passion and prejudice.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Lynwood E. Noah,* Deputy Chief Assistant Prosecuting Attorney, for the people.

*Neil C. Williston,* for defendant.

Before: R. M. MAHER, P.J., and BRONSON and R. J. SNOW,* JJ.

R. M. MAHER, P.J. Defendant, Jerry Wayne Smith, was convicted by a jury of first-degree murder, MCL 750.316; MSA 28.548. Sentenced to life in prison, he appeals as of right.

On April 27, 1978, four men participated in an armed robbery of the Brooks Brothers Food Store in Ypsilanti. Two of the robbers entered the store while two waited outside in separate cars. Four employees—Warren Wilfred Brooks, his brother Thomas Brooks, MaryJo Wayne, and Kenneth

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Mericle—were in the store when the robbers made their entrance.

In the course of the robbery, Thomas Brooks said, "Go ahead, you son of a bitch, shoot me", and began walking toward the door. One of the robbers, identified at trial as the defendant, thereupon took the life of Thomas Brooks with a blast from a shotgun.

Defendant raises several claims on appeal, one of which requires reversal.

I

Defendant first challenges the in-court identification by the victim's brother, Warren Wilfred Brooks. Mr. Brooks had identified the defendant at a pretrial lineup and again at trial. Although the court suppressed the lineup identification as impermissibly suggestive, it found that the in-court identification had a sufficiently independent basis.

When a trial court decides whether an in-court identification has an independent basis, it must consider eight factors.

1. Prior relationship with or knowledge of the defendant.

2. The opportunity to observe the offense.

3. Length of time between the offense and the disputed identification.

4. Accuracy or discrepancies in the pre-lineup or showup description and the defendant's actual description.

5. Any previous proper identification or failure to identify the defendant.

6. Any identification prior to the lineup or showup of another person as defendant.

7. The nature of the alleged offense and the physical and psychological state of the witness.

8. Any idiosyncratic or special features of defendant. See *People v Kachar,* 400 Mich 78, 95-96; 252 NW2d 807 (1977). The prosecutor must show by clear and convincing evidence that, considering these factors, "the in-court identification has a sufficient independent basis to purge the taint caused by the illegal confrontation". 400 Mich 97 (footnote omitted).

Applying the evidence to the above eight factors we find the following.

1. The witness had no prior relationship with or knowledge of defendant.

2. The witness viewed defendant for about one to 1-1/2 minutes from 3 to 4 feet away.

3. The in-court identification occurred about 10 months after the offense.

4. The witness's description of defendant to the police is consistent with defendant's actual description.

5. The first time the witness viewed the lineup he failed to identify defendant because Mr. Brooks thought he was to identify his accomplice, a shorter man.

6. Mr. Brooks had not identified another person as the defendant prior to the lineup.

7. The offense—first-degree murder—is a most serious crime. The victim was the witness's brother. Although the witness was not fatigued or under the influence of alcohol, his perception of the killer must have been affected by this traumatic event.

8. Defendant has no idiosyncratic or special features.

The first, third and seventh factors and, to a lesser extent, the fifth factor weigh against a finding of sufficient independent basis. The evidence weighing in favor of such a finding is, therefore, only somewhat stronger and is not in our judgment clear and convincing. However, on review we do not substitute our judgment for that of the trial court. This Court will not overturn a trial court's ruling at a suppression hearing unless it was clearly erroneous. *People v Ealey,* 102 Mich App 301, 305; 301 NW2d 514 (1980). We do not find that the trial court's ruling was clearly erroneous and, accordingly, we affirm it.

II

Defendant next argues that the prosecutor's reference to Charles Manson in his closing argument requires reversal.[1] We cannot agree.

---

[1] In his closing argument, the prosecutor addressed the jury:

"*[By Mr. Noah]:* Then we go to the green Dodge. Coincidentally, Mr. Nowak finds one fingerprint of the owner, and that's on the hood of the car. He finds two fingerprints of Donald Lathan *[sic],* one on the steering wheel, and Johnson tells you that Lathan *[sic]* is the driver, at least during the robbery. But how many fingerprints of Jerry Wayne Smith does he find in that Dodge? Not one, not two, not three, not four, but five; five total fingerprints of Jerry Wayne Smith on that Dodge Dart with the license plate HTL 682.

"Now Mr. Smith tells you, and faced with the fingerprint evidence what else can he do, defense counsel said he's going to explain what

A prosecutor's remarks must be examined in the context in which they were made. *People v Duncan,* 402 Mich 1, 16; 260 NW2d 58 (1977); *People v Allen,* 351 Mich 535; 88 NW2d 433 (1958). The prosecutor was apparently trying to point out that the police in this case, unlike those in the Manson investigation, had made no mistakes. He was, thus, commenting only on the strength of his case. This is permissible. *People v Rowen,* 111 Mich App 76, 82-83; 314 NW2d 526 (1981).

happened and he tries to make this explanation. He tells you he steals this little Dodge Dart, he didn't want to do it, and he's driving it for a short period of time, and he gets out his wallet to buy some Champale, and his probation officer's card falls out and makes him nervous about being in the car. I would submit to you that that would be insulting your intelligence and it's clearly a cock and bull story.

"But let's examine where those fingerprints of Mr. Smith are at in this car. Two of the left middle finger of Jerry Wayne Smith are on the driver's door outside. Two of the left thumb are on the driver window inside, and here's the one with—one fingerprint of this right index finger of Jerry Wayne Smith is found on the door molding below the window inside the passenger door.

"Now I'm going to anticipate a moment that Mr. Williston is going to be trying to attack the police investigation, talk about—In cases like this, and the cases are legion, where police have made mistakes. None was made in this case, but it brings to mind an illustration by Vincent Bugliosi about the Manson murders, and the house that Manson went to, Polanski's rented house, had a gate, a fence and the gate * * *.

"*Mr. Williston [defense counsel]:* Your Honor, at this time I'm gonna object. Counsel's getting off on a tangent. I think it's highly prejudicial to the rights of my client, and I think this is far afield from the evidence that's being introduced in this court.

"*The Court:* How does this * * *.

"*Mr. Noah:* I was trying to illustrate where in a case there was an apparent fingerprint on a button, and the police officer made the observation that to open the gate put his thumb on the button. There's nothing like that in this particular case. The first officer on the scene, a patrolman, did what he was trained to do, and that's to preserve the scene for evidence. A lot of evidence was found, and a comment could be made for all nine of the (inaudible) that killed Mr. Brooks; it really wouldn't have mattered whether they found one or none. It's obvious to all how Mr. Brooks died. But the one piece of evidence that was important to preserve was that little fingerprint on the Kool pack of cigarettes."

## III

Defendant next contends that the trial court erred in failing to require the prosecution to call Donald White as a res gestae witness. The prosecution is indeed obliged to call all res gestae witnesses. See *People v Castaneda,* 81 Mich App 453; 265 NW2d 367 (1978). However, the prosecutor is not under a duty to call an accomplice. *People v Belenor,* 408 Mich 244, 246; 289 NW2d 719 (1980); *People v White,* 401 Mich 482, 508-509; 257 NW2d 912 (1977). White was an accomplice inasmuch as he helped plan the robbery and stood as lookout. He was tried separately and was acquitted, however, before he was to testify at defendant's trial. His acquittal nevertheless does not change his status as an accomplice for purposes of applying the exception to the res gestae rule. The rationale behind the exception was stated in *People v Raider,* 256 Mich 131, 135-136; 239 NW 387 (1931):

"Obviously the exceptions were founded upon the recognized inclination or inducement of those close to the accused, by community of interest in the crime or relationship, to perjure themselves, if they deem it necessary, in his behalf, and the incongruity of requiring the prosecution to make such witnesses its own."

This case illustrates the wisdom of this reasoning. Defendant had two trials. Testifying at defendant's first trial, White made statements that were inconsistent with his testimony in his own case, causing the court to grant defendant's motion for mistrial. White was later charged with perjury. Moreover, White, still facing the perjury charge, refused to testify at defendant's second trial, invoking the privilege against self-incrimination. The trial court found, and we agree, that there was a sufficient

foundation to invoke the privilege. Under these circumstances, the trial court properly excused the prosecution from calling Donald White as a res gestae witness.

## IV

Finally, defendant claims the court erred in admitting gruesome photographs of the victim. Although defense counsel had earlier objected to the jury's viewing the photographs immediately after admission, he did not object to the admission of the photographs. Without a proper objection, appellate review is precluded absent manifest injustice. *People v Embree,* 70 Mich App 382; 246 NW2d 6 (1976).

Admission of photographs lies within the sound discretion of the trial court. *People v Eddington,* 387 Mich 551, 562; 198 NW2d 297 (1972); *People v Rocha,* 110 Mich App 1, 13; 312 NW2d 657 (1981). The issue upon review is whether the photographs are substantially necessary or instructive to show material facts or conditions or merely calculated to excite passion and prejudice. *People v Falkner,* 389 Mich 682; 209 NW2d 193 (1973).

We find that these photographs were neither substantially necessary nor instructive to show a material fact and were introduced only to excite the jury's passion and prejudice. Admitting these photographs caused a manifest injustice. Accordingly, we reverse.

The photographs were used twice at trial and only to establish that the extensive wounds they depicted were those of Thomas Brooks. The nature of the wounds, however, did not serve to rebut

defendant's alibi defense; nor was it relevant to any element of first-degree murder. As Judge BRONSON said in *People v Wallach,* 110 Mich App 37, 67; 312 NW2d 387 (1981):

"Since defendant did not deny that the victims were brutally killed, but only his participation in the killings, the photographs were improperly admitted. They had no probative value in tending to establish first-degree murder as opposed to some other type of killing nor any value in rebutting defendant's defense. Moreover, at least some of the photographs, particularly the color shots, may well have had a tendency to inflame the jurors and distract their attention from truly probative evidence."

In a case similar to this one, the Supreme Court wrote:

"Defendant's appropriately filed notice of alibi and his consistent reliance on alibi as his defense, coupled with the unrebutted proof that [the murder victim] was killed by a shotgun blast, rendered the use of these photographs neither substantially necessary nor instructive to show material facts or conditions. We can find no other reason for their use than to excite passion and prejudice." *People v Falkner, supra,* p 685.

The photographs of Thomas Brooks served only to inflame the jury. Their admission was reversible error.

Reversed and remanded.