# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 24, 2018

Plaintiff-Appellee,

v

No. 335990
Macomb Circuit Court
LC No. 2015-004463-FC

THOMAS RAY GRINNELL, JR.,

Defendant-Appellant.

Before: BOONSTRA, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of first-degree criminal sexual conduct (CSC I) (sexual penetration with a person under 13 years of age), MCL 750.520b(1)(a). The victim is defendant's daughter. Defendant was charged with a single count, but evidence was admitted of other sexual assaults defendant committed against the victim when she was aged between 8 and 12 years, and of acts of domestic violence defendant committed against both the victim and the victim's mother. The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 30 to 60 years' imprisonment. We affirm.

The victim was 14 years old when she testified at trial. The charged incident occurred when she was 12 years old. The victim generally lived with her mother, but would visit defendant on weekends. Defendant lived with his girlfriend. The victim had her own room at defendant's residence. The victim testified that during the late hours of July 5, 2014, she was in her bedroom with the door closed, messaging friends on a cellphone until around midnight, after which she eventually fell asleep. She remembered being woken up when defendant entered her room and closed the door behind him. Defendant came in, sat down on her bed, and started "touching her." Defendant then touched her thigh, breast, and then the outside and inside of her vagina. The victim stated that, at that point, defendant pulled her pajama pants down. Defendant removed his pants and tried to insert his penis into her vagina, but he was only able to get it in "a little bit," which was further clarified to mean that only "the tip" of his penis was inserted. The victim explained that she kept rolling away, which prevented him from being able to insert his penis all the way in. This caused him to get angry and eventually leave. The victim explained that she did not yell for help because, although she knew defendant's girlfriend was sleeping in another room of the house, it may have caused defendant to hurt her or defendant's girlfriend may not have heard her.

-1-

At some point over the same weekend, the victim got in trouble for sending inappropriate sexual text messages to the boy who lived next door. When the victim returned home, her mother grounded her. The victim then wrote a note to her mother, stating, "My dad forced me to have sex with him that is why this stuff comes to my head," "[t]his has been going on since I was 8," and "I was scared to tell you." The victim's mother immediately took the victim to the hospital, where she was examined. The victim was also interviewed by Care House Forensic Interviewer Heather Solomon.

Evidence of prior acts of sexual assaults defendant had committed against the victim was introduced pursuant to MCL 768.27a, and evidence of prior acts of domestic violence defendant had committed against both the victim and the victim's mother was introduced pursuant to MCL 768.27b. The victim testified that defendant first sexually assaulted her when she was 8 years old, and it continued until she was 12. She testified about incidents involving vaginal, anal, and oral penetration, as well as defendant showing her "porn" on his phone. The victim explained that even though defendant's girlfriend was present in the residence on at least some occasions, she did not think defendant's girlfriend "would be good enough help" and that "he might even try to attack her." She did not have her own phone that worked, and although she considered running away, she had nowhere to go. The victim also testified that she had seen defendant "hurt [her] mom a lot," and she did not tell anyone in part because she was "scared he was going to hurt [her]." She also explained that she did not seek to avoid going to defendant's house because other than trying to avoid being around defendant, she enjoyed hanging out with friends and "do[ing] stuff" with defendant's girlfriend. Defendant told her "to keep it between us two."

The victim's mother testified that defendant forced her to have sex against her will on numerous occasions, which she did not report out of embarrassment. In 2006, defendant punched the victim's mother in the face, in the victim's presence, and in 2008, defendant attempted to cause the victim's mother to miscarry a pregnancy by beating her in the stomach. In both instances, defendant was arrested, but the victim's mother did not follow through with prosecution. In 2007, defendant fractured and dislocated the victim's mother's foot by "stomping" on it. In 2010, defendant beat the victim with a belt because she did not eat her fish dinner, and which resulted in defendant being convicted of fourth-degree child abuse and domestic violence. On one occasion in 2015, defendant went to the victim's mother's house and damaged her property, which resulted in the victim's mother obtaining a PPO against defendant. On another occasion in 2015, defendant falsely accused the victim's mother of armed robbery, for which defendant was convicted of filing a false report.

On appeal, defendant does not challenge the admission of evidence of his prior acts of sexual assault. Defendant argues that the trial court erred in admitting the other acts of domestic violence. We disagree.

The trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo; it is necessarily an abuse of discretion to admit legally inadmissible evidence. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). MCL 768.27b(1) provides in relevant part:

> [I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of

domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

MCL 768.27b(5)(a) defines an "offense involving domestic violence," in part, as "[c]ausing or attempting to cause physical or mental harm to a family or household member," "[p]lacing a family or household member in fear of physical or mental harm," "[c]ausing or attempting to cause a family or household member to engage in involuntary sexual activity by force, threat of force, or duress," or "[e]ngaging in activity toward a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 768.27b(5)(b) defines a "[f]amily or household member," in part, as "[a]n individual with whom the person resides or has resided," "[a]n individual with whom the person has or has had a child in common," or "[a]n individual with whom the person has or has had a dating relationship."

Defendant does not explicitly concede that the acts of violence against the victim and her mother, the acts of sexual assault against the victim's mother, and the false report of armed robbery constitute domestic violence. However, defendant does appear to tacitly accept that they are acts of domestic violence. We agree that they are acts of domestic violence. Both the victim and her mother constitute a "family or household member" under the definitions provided by MCL 768.27b(5)(b), and all of the described acts would, at a minimum, make any reasonable person feel terrorized, frightened, intimidated, threatened, harassed, or molested. Consequently, subject to an analysis under MRE 403, the evidence was clearly admissible pursuant to MCL 768.27b(1), and the trial court properly excluded evidence of additional acts of domestic violence that defendant had perpetrated more than ten years previously pursuant to MCL 768.27b(4). Defendant argues that the evidence was inadmissible pursuant to MRE 404(b) and MRE 403.

The former argument is misplaced. It is well established that, within their respective scopes, MCL 768.27a and MCL 768.27b supersede MRE 404(b) and provide an independent basis for admitting evidence of certain kinds of prior acts by a defendant. *People v Schultz*, 278 Mich App 776, 777-779; 754 NW2d 925 (2008); *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). If the evidence at issue is admissible under either statute, it is irrelevant whether the evidence would be inadmissible under MRE 404(b). Notably, evidence admissible under MCL 768.27b may be introduced for any relevant purpose, provided its "probative value is [not] substantially outweighed by" any of the concerns set forth in MRE 403. We therefore need only consider defendant's arguments that the evidence of his prior acts of domestic violence was irrelevant and substantially more prejudicial than probative.

Defendant presented argument to the effect that the victim had fabricated her sexual assault by defendant because the victim had recently gotten in trouble for sending inappropriate text messages to a boy. Defendant further commented on the victim's delay in reporting, lack of corroboration, and general credibility. The credibility of a witness is always relevant. *People v Lyons*, 51 Mich 215, 216; 16 NW 380 (1883); *People v Layher*, 238 Mich App 573, 578-581; 607 NW2d 91 (1999). The victim explained that she was scared of defendant and did not believe that any available other adults could help her. Evidence that the victim had very good reasons to be afraid of defendant bolstered her credibility and, consequently, was relevant. Additionally, in discussing MCL 768.27a, our Supreme Court has observed that evidence of a defendant's

character and propensity to commit a crime has traditionally been restricted because of the danger a jury might give such evidence too much consideration, not because such evidence is irrelevant. *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012). This Court has explained that MCL 768.27a and MCL 768.27b are "sister statutes" subject to essentially the same analysis regarding admissibility and their relationship to MCR 404(b). *Scultz*, 278 Mich App at 778-779. Notwithstanding MRE 404(b), the evidence of defendant's prior acts of domestic violence against the victim and the victim's mother were admitted for relevant purposes and was proper under MCL 768.27b. See *Watkins*, 491 Mich at 469-472, 492 n 92.

Nevertheless, MCL 768.27b(1) expressly requires consideration of MRE 403, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). In examining MCL 768.27a, our Supreme Court provided a nonexhaustive list of factors that could lead a trial court to conclude that other acts evidence was unfairly prejudicial under MRE 403:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

The Court further explained that "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect. That is, other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *Watkins*, 491 Mich at 487.

As discussed, the evidence was unambiguously relevant and unambiguously within the ambit of MCL 768.27b. Defendant's contention that the acts tend to show his propensity for domestic violence is not grounds for deeming them overly prejudicial. *Watkins*, 491 Mich at 487. Defendant does not make any argument concerning any specific act introduced into evidence. Defendant's acts of sexual assault against the victim's mother is clearly similar to the charged act, and we note that the charged act would also constitute "domestic violence" pursuant to MCL 768.27b(5)(a). Defendant's acts of physical violence were additionally similar insofar as defendant used force and fear to dominate and control his family members. Exclusion of evidence under MRE 403 is exceptional. *People v Daniels*, 311 Mich App 257, 273; 874 NW2d 732 (2015). We do not find that the evidence of the other acts of domestic violence committed by defendant were so unfairly prejudicial that their exclusion was warranted.

Defendant next argues that the prosecutor committed misconduct during closing argument by improperly referencing several high-profile cases involving sexual abuse of minors; specifically, MacKenzie Phillips, Jerry Sandusky, and Ariel Castro. We agree. However, while improper, we are not persuaded that defendant's trial as a whole was rendered unfair as a result.

Defendant did not object to these particular statements by the prosecutor, so our review is for plain error affecting defendant's substantial rights, meaning either that plain error resulted in the conviction of a defendant who was actually innocent or the error was so grievous that it fundamentally undermined the propriety of the proceedings. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003); *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). The prosecutor has considerable discretion in crafting arguments based on facts in evidence and any reasonable inferences, and "need not confine argument to the blandest possible terms." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). Furthermore, the prosecutor is entitled to fairly respond to the defense. *Id*. at 67-68. However, the prosecutor may *not* intentionally inject "inflammatory references . . . with no apparent justification except to arouse prejudice." *People v Bahoda*, 448 Mich 261, 266; 531 NW2d 659 (1995). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014).

During closing argument, the prosecutor stated, in relevant part:

In 2009 child actress MacKenzie Phillips went on national television, she went on the Oprah Winfrey show and disclosed to the world that when she was younger her famous father had molested her and had sex with her and that they had a secret relationship for a decade of her life.

Her father was the lead singer of the Mamma and Papas and would tour together with McKenzie. She kept this secret when she willingly took part in this while that was happening.

In 2012 we learned about assistant football coach Jerry Sandusky, Penn State University. We learned about the boys that would go to his football camp and that he would rape them in the shower, and that those boys would return to those camps and that they would return to Uncle Jerry's home for sleep overs, even though he was raping them in the bedroom downstairs with his wife upstairs.

We learned about Areal [sic] Castro in 2013 in a [sic] Ohio home where three young girls were held captive for about a decade [and were] repeatedly raped, impregnated.

We learn about how at times those girls could have screamed, pounded on walls, picked up the phone, called 911. It took them a decade to gain that kind of strength.

We know, ladies and gentlemen, that there are things that are happening right now in this world that we cannot even wrap our mind around, and yet those things even include the continued rape of a person's own daughter.

-5-

People like the Defendant don't deserve the title "father[.]" He doesn't even deserve to be referred to as a man, rather he is a predator. Predators are selfish, vial, dangerous, and they act on impulse. They take what they want, when they want it.

[The victim] was conditioned to be his sex slave to the point where she didn't even resist. Just like MacKenzie Phillips. She was his secret girlfriend.

Now, we talked about in jury selection how children handle things differently, like in those [stories] that I just told you. Children handle things differently and you all made the commitment in jury selection that even if a child handled something in a way that I would not necessarily expect, that that doesn't mean they are lying. And you agreed and you committed that you wouldn't hold that against them.

* * *

The Defendant has been entitled to his constitutional rights in this process. And today is the day for [the victim's] voice to finally be heard. And the law says that her voice alone is enough. Secrets, secrets like MacKenzie Phillips, the victims of Jerry Sandusky, like [the victim], the secret girlfriend of her father, the predator's victims. The predator is counting on the fact that you won't believe those victims.

* * *

You heard about how [the victim] never refused to go to the defendant's house, but you heard from [the Care House] expert . . . [the victim] was detached, that was her affect and demeanor. She had this detached way about her, and that there is such a thing as [a] compliant victim. Just like MacKenzie Phillips, just like the victims of Jerry Sandusky.

Because defendant's theory of the case was essentially that the victim fabricated the assault and that her behavior corroborated deceit rather than truthfulness, it was clearly proper for the prosecutor to explain to the jury why a victim might delay reporting. Reading the transcript in context and considering the entire record, it appears that the prosecutor's statements were made for the purpose of explaining the reasons why the victim acted in the manner she did, such that she repeatedly returned to defendant's home despite the years of sexual abuse and she maintained the secrets surrounding her father's behavior. In every reference to these famous cases, the prosecution finished the reference by drawing the analogy back to the victim's behavior. Describing defendant as a "predator" is neither excessively colorful nor an entirely unwarranted inference from the evidence.

However, making direct references to notorious and exceedingly emotionally charged other cases simply went too far. Doing so is not necessarily an error that warrants reversal. See *People v Smith*, 122 Mich App 106, 111-112; 332 NW2d 428 (1982), reversed on other grounds 417 Mich 1100.39 (1983) (merely noting that the police in the case had not made the same mistakes made in the Charles Manson investigation was permissible); *People v Rowan*, 111 Mich

-6-

App 76, 82-83; 314 NW2d 526 (1981) (commenting "that Jack Ruby had the same presumption of innocence as defendant even though he shot Lee Harvey Oswald on television in front of millions of people" was a reasonable comment on the strength of the case against defendant in context). However, in *People v Kelley*, 142 Mich App 671, 672-674; 370 NW2d 321 (1985), the case was "essentially a credibility contest between the victim and the other witnesses, including defendant," and the prosecutor's remark that everybody thought John Wayne Gacey was a very nice man until "they started digging up all the bodies" raised an impermissible likelihood that the jury would conflate Gacey and the defendant. In *People v Pullins*, 145 Mich App 414, 422-423; 378 NW2d 502 (1985), this Court admonished the prosecution not to equate the defendant with other high-profile criminals and implied that doing so might constitute "an impermissible 'civic duty' argument."

In this case, where credibility was paramount, invoking emotionally charged, high profile crimes simply goes too far. However, because the prosecutor did have an arguable need to explain the victim's behavior, we find that the prosecutor merely went too far, not that there was *no* justification other than arousing prejudice. *Bahoda*, 448 Mich at 266. The impropriety of such excessive zeal should have been apparent. Nevertheless, strictly speaking, it was a rebuttal to issues raised by defendant during the trial, who in his own closing argument also pithily pointed out that the prosecutor had focused on other cases but avoided focusing on evidence in *this* case, and argued that the prosecutor was merely "sling[ing] mud." The jury was well aware that the case turned on credibility. The prosecutor's commentary was improper, but we are not persuaded that it was totally lacking in any possible justification in context, nor are we persuaded that, under our deferential standard of review, it "resulted in the conviction of an actually innocent defendant" or "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Carines*, 460 Mich at 763 (quotation omitted).

Defendant finally argues that the late discovery of the victim's mother's medical records and the victim's Care House transcript violated discovery rules and denied him a fair trial, because the trial court's remedy for the violation was insufficient. We agree that there was at least one violation of the discovery rules and that at least one of the trial court's remedies was insufficient, but we are not persuaded that these errors deprived defendant of a fair trial.

We review whether a defendant received a fair trial de novo. *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). "When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). "We review a trial court's decision regarding the appropriate remedy for a discovery violation for an abuse of discretion." *People v Dickinson*, 321 Mich App 1, 17; 909 NW2d 24 (2017). "To obtain relief for a discovery violation, the defendant must establish that the violation prejudiced him or her." *Id*. at 17-18.

On the first day of trial, while mother was testifying, the prosecution attempted to admit a single printed page from a compact disk ("CD"), which contained 240 pages of the victim's mother's medical records related to one of the prior acts of domestic violence discussed *supra*. Although the prosecution had previously provided defendant with the one page being sought for admission, he had not received a copy of the entire CD. The record does not indicate the reason

why the CD was not provided to defendant. However, multiple side-bars were held that appear related to the matter, which we presume provided the trial court with more information. After the issue was raised, the trial court ordered that defendant receive the CD and it gave defendant "the evening" to review the entire CD so that defendant could use the information to cross-examine mother the following day. However, the prosecution then withdrew its request to admit the single page; instead, it elicited the sought-after testimony directly from mother related to the injuries she received from defendant.

Assuming the prosecution did in fact violate discovery, we conclude that one evening to review the entire CD may have been a sufficiently inadequate remedy to constitute an abuse of discretion if defendant could articulate any concrete explanation of how it would have helped him. Defendant reasonably notes that because he did not have the records, he could not investigate them. However, defendant does not state what, if anything, on the CD could have actually helped him at trial, affected his trial strategy, or otherwise been of any particular use. Because defendant cannot articulate what difference earlier possession of the CD or a longer time in which to review the CD would have made, we cannot find the requisite prejudice to grant him relief. *Dickinson*, 321 Mich App at 17.

On the third day of trial, Care House Forensic Interviewer Heather Solomon testified that she had reviewed "the notes that were transcribed of the interview" with the victim, at which time defendant objected that that was "the first time [he had] heard anything about any notes relative to any interviews." The prosecutor explained that "that is not something that is typically obtained and/or provided by the People unless the defense requests it and subpoenas it," and he also was not in possession of the notes and had never seen them. It was then revealed that a transcript of the victim's interview also existed, which the prosecution admitted was discoverable but protested that the prosecution had not sought it and defendant had not requested it. The prosecution explained that a summary of the evaluation had been given to defendant by means of the police report. Solomon explained to the court that she had not brought her entire file because she had not been asked to; the trial court excused her to retrieve the entirety of her records and ordered that her testimony would be resumed after defense counsel had an opportunity to review those records. After the records were provided, defense counsel protested that he would need some time to review the approximately 50 pages, to which the trial court responded, "All right. Well, do the best you can. If you need more time, I will give it to you."

The trial court held a brief recess, after which defendant moved for a continuance, noting that the interview was structured into two separate documents, one with questions and one with answers, that he needed to correlate and then compare to the victim's preliminary examination transcript. The trial court denied the request, but promised to entertain a renewed request "after the lunch hour" if defendant still needed more time. Defendant also moved for a mistrial, in response to which the prosecution argued that the records were not routinely provided by Care House or otherwise provided unless subpoenaed. The trial court denied the motion, agreeing that the records were not routinely provided and that nothing had prevented defendant from subpoenaing them if he believed they were necessary. The "lunch hour" proved to be half an hour, during which time the attorneys were also required to finalize the jury instructions with each other. Defendant renewed his motion for a mistrial, which the trial court denied. However, although the trial court permitted the prosecutor to complete his direct examination of the victim, which was then in progress, the trial court ordered that her cross-examination, and further

testimony from Solomon, would be continued to the following day. The next day, the prosecution expressly stated that it was "not seeking to elicit anything that [the victim] said to Heather Solomon."

Regardless of the usual procedure of the prosecutor's office, the prosecution had a mandatory obligation to provide defendant with Solomon's Care House records pursuant to MCR 6.201(A)(2), because the transcript contained a written or recorded statement by a lay witness whom the prosecution intended to, and actually did, call at trial. The trial court entered a discovery order requiring both counsel to "provide discovery in compliance with MCR 6.201." The prosecutor violated both this order and the Court Rule. Notwithstanding the prosecution's contention that it was unaware that the document existed, the prosecution still had the obligation to discover the evidence and provide it to defendant. See *Kyles v Whitley*, 514 US 419, 437; 115 S Ct 1555; 131 L Ed 2d 490 (1995) (stating that the government is held responsible for the evidence in its control even if the prosecutor is unaware of the evidence). However, giving defendant overnight to review fifty pages of interview transcripts is much less unreasonable than overnight to review 240 pages of medical records, and again, defendant does not articulate what would have been done differently at trial if he had the Care House records earlier. We find that the prosecutor violated the discovery rules, but because defendant cannot articulate what prejudice he suffered, we are unable to find that the trial court's remedy for the prosecutor's discovery violation was an abuse of discretion.

We caution that although we do not find here that defendant's trial was sufficiently undermined by the prosecutor's errors as described above, similar errors in another case might warrant reversal.

Affirmed.

/s/ Mark T. Boonstra
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause